J-A02034-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| GLENN GRATZ | |
| Appellee | No. 2376 EDA 2013 |

Appeal from the Order July 22, 2013
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0003930-2011

BEFORE:  PANELLA, J., LAZARUS, J., and WECHT, J.

MEMORANDUM BY PANELLA, J.                    **FILED APRIL 17, 2015**

Appellant, the Commonwealth of Pennsylvania, appeals from the order granting suppression of all evidence seized at the residence of Appellee, Glenn Gratz.[1]  The Commonwealth contends that the trial court erred in its application of the totality of the circumstances standard for reviewing the sufficiency of the affidavit of probable cause.  We agree and, therefore, reverse the order and remand for further proceedings.

After searching his residence, the Commonwealth charged Gratz with three counts of possession of narcotics with intent to deliver ("PWID"), three

---

[1] This appeal properly invokes the jurisdiction of this Court as an interlocutory appeal from an order that terminates or substantially handicaps the prosecution. The Commonwealth has certified in good faith that the Order substantially handicaps the instant prosecution. **See** Pa.R.A.P., Rule 311(d).

counts of possession of narcotics, and four counts of possession of drug paraphernalia. Prior to trial, Gratz filed a motion to suppress the evidence discovered during the search of his residence, arguing that the affidavit of probable cause was insufficient to justify the search of his residence. After a hearing, the trial court granted suppression of all the evidence discovered at Grant's residence, and the Commonwealth filed this timely appeal.

On appeal, the Commonwealth contends that the trial court erred in granting the suppression motion. We review a challenge to an order granting suppression according to the following principles.

> The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

***Commonwealth v. Dukeman***, 917 A.2d 338, 341 (Pa. Super. 2007) (citations omitted).

Here, the Commonwealth has not challenged any of the factual findings of the trial court. Furthermore, the factual record developed at the suppression hearing consists of only the affidavits of probable cause.[2] We therefore focus our attention upon the legal conclusions set forth by the trial court in support of its order.

---

[2] One affidavit was for the home, the other for Gratz's vehicle. The two affidavits are substantially similar; any distinctions are irrelevant for purposes of this appeal.

The trial court found that the affidavit did not support a finding of probable cause to search Gratz's residence. Specifically, the trial court concluded that the affidavit did not provide sufficient reliable allegations to support a finding that evidence of criminal activity could be found at Gratz's residence. When reviewing the sufficiency of an affidavit of probable cause, we follow well established standards.

> In **Commonwealth v. Gray** our Supreme Court adopted the "totality of the circumstances" standard, announced in **Illinois v. Gates**, for evaluating whether probable cause exists for the issuance of a search warrant based upon information received from a confidential informant. In **Gray**, our Supreme Court stated:
>
>> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ⋯ conclud[ing] that probable cause existed.'
>
> This determination must be based on facts described within the four corners of the supporting affidavit. Furthermore, we stress that probable cause exists where there is a probability of criminal activity, not a *prima facie* showing of such activity.
>
> When information essential to a finding of probable cause is garnered from the use of confidential informants, the issuing authority determines the reliability of the informant's information from the facts supplied by the police official. The determination of reliability does not hinge on disclosed records "regarding the track record of the informant." Furthermore, the affidavit need not "contain the names, dates, or other information concerning prior arrests or convictions." The affidavit must, however, at the very least, contain an averment stating the "customary" phrase

- 3 -

that the informant has provided information which "'has in the past resulted in' arrests or convictions."

***Dukeman***, 917 A.2d at 341.

In the instant case, the affidavit of probable cause alleged that experienced narcotics officers interviewed a confidential informant, ("CI #1") who informed them that Gratz's wife, Diane Barnes, was dealing methamphetamine from her residence in Plymouth Township. CI #1 indicated that this knowledge was gleaned from face-to-face and telephonic communications with Barnes and her supplier, the last of which occurred approximately a month before the interview. The affidavit indicated that CI #1 had provided information to officers in the past that led to the arrest of drug traffickers and the seizure of narcotics.

The affidavit further indicated that officers had also received an anonymous complaint about Barnes and Gratz dealing methamphetamine from their residence at 3 Colton Drive, Plymouth Township.

The affidavit also described independent investigation performed by the officers. Slightly more than a month after the interview with CI #1, officers followed Gratz after he left his home and traveled to a nearby shopping center. After parking at the center, Gratz left his vehicle and walked to a nearby car, occupied by Barnes. The two interacted for a short time, and then Gratz returned to his vehicle, while Barnes drove away.

After Barnes had left, Gratz walked to another nearby vehicle, occupied by Kimberly Friedberg. Officers observed Gratz hand Friedberg a

small bag in exchange for currency. Gratz then returned to his vehicle and drove away.

Friedberg departed the parking lot in the opposite direction and was stopped by officers shortly thereafter. Friedberg denied the existence of any narcotics transaction, but told officers that she knew Gratz used methamphetamines and that Barnes dealt methamphetamines.

The affidavit also described an interview with another confidential informant ("CI #2"). CI #2 informed officers that Gratz dealt methamphetamines. CI #2 also informed officers that this knowledge was derived from an instance where CI #2 observed Gratz preparing for the purchase of a large amount of methamphetamine while in his house. CI #2 further indicated that Gratz had intended to purchase a pound of methamphetamine that had been seized by other officers in an unrelated operation.

The trial court found that these allegations were insufficient. However, this Court has previously held that

> [w]hen two independent informants both supply the same information about a particular crime to the police, each source tends inherently to bolster the reliability of the other. Although the information supplied by one questionable source may be insufficient, the probability is extremely small that a second independent source would supply identical information if it were not probably accurate. Such corroboration by independent sources produces the necessary reliability to establish probable cause.

***Dukeman***, 917 A.2d at 342. Here, four separate informants, CI #1, an anonymous complaint, Friedman, and CI #2 all indicated that either Gratz or his wife Barnes were involved in the distribution of methamphetamines in Plymouth Township. Furthermore, officers independently observed Gratz leave his residence and engage in what appeared to be a narcotics transaction with Friedman. When viewed in a common sense fashion, these allegations are more than sufficient to allow a reasonable person to conclude that evidence of methamphetamine trafficking would be found in the residence at 3 Colton Drive and in Gratz's vehicle. We therefore conclude that the trial court erred in granting suppression of the evidence and reverse the order.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/17/2015</u>